**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

IN RE:

| | |
|---|---|
| **MARKISHA LATRICE JOHNSON AKA** | **17-30512** |
| **MARKISHA MAYE** | **CHAPTER 7** |
| **DEBTOR(S)** | |

**MOTION FOR RELIEF FROM THE AUTOMATIC**
**STAY OF SECTION 362(d) OR IN THE ALTERNATIVE ADEQUATE PROTECTION**

    **COMES NOW** Ocwen Loan Servicing, LLC and respectfully shows the Court the following:

    1.  On March 30, 2017, the Debtor(s), Markisha Latrice Johnson aka Markisha Maye, filed a petition with the Bankruptcy Court for the Western District of North Carolina under Chapter 13 of Title 11 of the United States Code. On February 28, 2018 the case was converted to a case under Chapter 7 of Title 11 of the United States Code.

    2.  On the date the petition was filed, the Debtor(s) Markisha Latrice Johnson aka Markisha Maye was the owner of real property with an address of 916 Old Forester Lane, Charlotte, NC 28214 ("Property") and more particularly described in the Deed of Trust referred to below.

    3.  The said Deed of Trust secures a Note in favor of American Security Mortgage Corporation, in the original principal amount of $154,163.00, dated January 5, 2009 ("Note"), a copy of which is attached as "Exhibit 1."

    4.  The Property is subject to the first lien of the Movant by the Deed of Trust recorded in the Mecklenburg County Public Registry, ("Deed of Trust"), a copy of which is attached as "Exhibit 2."

    5.  The said Note and Deed of Trust have been transferred and assigned to Ocwen Loan Servicing, LLC.

    6.  The Debtor(s) has defaulted in the payment of the mortgage payments. Upon information and belief, the amount of the default, exclusive of attorney fees and costs, is as follows:

| | |
|---|---|
| 5 payments at $937.21 | $4,686.05 |
| March 1, 2015 To July 1, 2015 | |
| 11 payments at $935.30 | $10,288.30 |
| August 1, 2015 To June 1, 2016 | |
| 8 payments at $934.04 | $7,472.32 |
| July 1, 2016 To February 1, 2017 | |
| 1 payment at $956.28 | $956.28 |
| March 1, 2017 To March 1, 2017 | |
| 12 payments at $937.17 | $11,246.04 |
| April 1, 2017 To March 1, 2018 | |
| | |
| Less Suspense | ($831.39) |
| | |
| TOTAL PAYMENTS DUE | $33,817.60 |

    7.  The approximate payoff as of good through March 26, 2018 is $161,515.16.

    8.  The scheduled value of the subject property is $146,400.00. This information was obtained from Schedule D.

    9.  The Debtor's Statement of Intent provides that they are attempting to work on a loan modification for the Property.

    10.  Because the debtor(s) have failed to keep the payments current, as required, the property is not necessary for an effective reorganization, and there is no equity in the property, Ocwen Loan Servicing, LLC, is entitled to relief from the Automatic Stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

    **WHEREFORE,** Ocwen Loan Servicing, LLC prays the Court as follows:

1.    Modify the Automatic Stay of Section 362(a) of the Bankruptcy Code to permit Ocwen Loan Servicing, LLC to enforce its security interest in the real property of the Debtors.

2.    As an alternative to the relief prayed for above, grant adequate protection to Ocwen Loan Servicing, LLC for its interest in the property of the Debtor(s).

3.    Modify Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case and so Ocwen Loan Servicing, LLC may immediately enforce and implement this order granting relief from the automatic stay.

4.    Grant Ocwen Loan Servicing, LLC such other and further relief as may seem just and proper.

5.    The Movant further seeks relief to contact the Debtor by telephone or written correspondence and, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.

This the 2nd day of April, 2018.

*/s/ Michael Jay Emrey*
Michael Jay Emrey, Attorney for Creditor, Bar # 49187
memrey@logs.com |704-831-2315
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Jonathan Davis
jodavis@logs.com | 704-831-2392
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

IN RE:

**MARKISHA LATRICE JOHNSON AKA**                          17-30512
**MARKISHA MAYE**                                          CHAPTER 7
**DEBTOR(S)**

**NOTICE OF OPPORTUNITY FOR HEARING**

     **TAKE NOTICE** that a motion has been filed by Ocwen Loan Servicing, LLC.  A copy of the motion accompanies this notice.

     **TAKE FURTHER NOTICE** that any response, including objection, to the relief requested in the attached motion, should be filed with the Clerk of the Bankruptcy Court within **FOURTEEN (14) DAYS** of the date of this Notice and a copy served on the attorney identified below and upon other parties as required by law or Court order.  Any response shall clearly identify the specific motion to which the response is directed, and it shall comply fully with any Local Bankruptcy Rules applicable.

     **TAKE FURTHER NOTICE** that no hearing will be held on this motion or application unless a response is timely filed and served, in which case, the Court will hear the motion as follows:

| LOCATION | DATE AND TIME |
|---|---|
| US Court House-1st floor<br>401 West Trade Street<br>Charlotte, NC 28202 | April 23, 2018<br>9:30 a.m. |

This the 2nd day of April, 2018.

*/s/ Michael Jay Emrey*
Michael Jay Emrey, Attorney for Creditor, Bar # 49187
memrey@logs.com |704-831-2315
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Jonathan Davis
jodavis@logs.com | 704-831-2392
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**IN RE:**

| | |
|---|---|
| **MARKISHA LATRICE JOHNSON AKA** | **17-30512** |
| **MARKISHA MAYE** | **CHAPTER 7** |
| **DEBTOR(S)** | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing and annexed pleading or paper upon:

(Served via U.S. Mail)
Markisha Latrice Johnson aka Markisha Maye
916 Old Forester Lane
Charlotte, NC 28214

(Served via Electronic Notification Only)
David William Hands
3558 N Davidson Street
Charlotte, NC 28205

(Served via Electronic Notification Only)
A. Burton Shuford
8301 University Executive Park Drive
Suite 120
Charlotte, NC 28262

(Served via U.S. Electronic Notification Only)
Shelley K. Abel
Bankruptcy Administrator
402 W. Trade Street, Room 200
Charlotte, NC 28202

by depositing the same in a postpaid wrapper properly addressed to each such party or his attorney of record in a post office or other official depository under the exclusive care and custody of the United States Postal Service and/or by electronic mail, if applicable.

This the 2nd day of April, 2018.

*/s/ Michael Jay Emrey*
Michael Jay Emrey, Attorney for Creditor, Bar # 49187
memrey@logs.com |704-831-2315
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Jonathan Davis
jodavis@logs.com | 704-831-2392
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

# NOTE

Multistate

**January 05, 2009**
[Date]

**916 OLD FORESTER LANE**
**Charlotte, NC 28214**
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **AMERICAN SECURITY MORTGAGE CORPORATION**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of   **ONE HUNDRED FIFTY FOUR   THOUSAND   ONE HUNDRED SIXTY THREE   AND 00/100**

Dollars (U.S. $ **154,163.00**          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   **SIX AND 000/1000**
percent (          **6.000** %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **March 1st**          ,2009          . Any principal and interest remaining on the first day of **February**          , **2039**          , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at **2101 REXFORD RD., SUITE 150W**
**CHARLOTTE, NC 28211**                    or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ **924.29**          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - 10/95

Initials

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR AND 000/1000** percent ( **4.000** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
Markisha L Johnson                 -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                          -Borrower

PAY TO THE ORDER OF

**GMAC Bank** _____ WITHOUT RECOURSE

AMERICAN SECURITY MORTGAGE CORPORATION

KATHY ADAIR
VICE PRESIDENT

PAY TO THE ORDER OF
GMAC MORTGAGE, LLC
WITHOUT RECOURSE

D. CHIODO
ASSISTANT SECRETARY
GMAC BANK

PAY TO THE ORDER OF

Ocwen Loan Servicing, LLC
WITHOUT RECOURSE

D. CHIODO
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC  f/k/a
GMAC MORTGAGE CORPORATION

Pay to the order of

Without recourse
Ocwen Loan Servicing, LLC

CHAR JULION Authorized Signers



FOR REGISTRATION J. DAVID GRANBERRY
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
2009 JAN 06 10:38:31 AM
BK:24351 PG:608-619 FEE:$54.00
INSTRUMENT # 2009001153

2009001153

# DEED OF TRUST

**State of North Carolina**

FHA Case No.

Return To: **McMillian & Terry** /jo **(Investors Title)**
**6101 Carnegie Blvd Suite 310**
**Charlotte, NC 28209**
Prepared By: **MARLEE THAO**
**2101 REXFORD RD., SUITE 150W**
**CHARLOTTE, NC 28211**

MIN

THIS DEED OF TRUST ("Security Instrument") is made on **January 05, 2009**
The Grantor is **Markisha L Johnson**
          **(married)**

("Borrower"). The trustee is **PHILIP R MAHONEY**

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
**AMERICAN SECURITY MORTGAGE CORPORATION**

("Lender") is organized and existing under the laws of **NORTH CAROLINA**                     , and has an address of   **2101 REXFORD ROAD, SUITE 150W CHARLOTTE NC 28211-**
                            . Borrower owes Lender the principal sum of
**ONE HUNDRED FIFTY FOUR   THOUSAND   ONE HUNDRED SIXTY THREE   AND 00/100**
                     Dollars (U.S. $**154,163.00**        ).

FHA North Carolina Deed of Trust with MERS - 4/96
**VMP**®-4N(NC) (0510)           Amended 2/01
Page 1 of 9        Initials:
       VMP Mortgage Solutions, Inc.

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **February 1, 2039**
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in **MECKLENBURG**                                    County,
North Carolina:
**see attached**

```
BEING all of Lot 134 of CEDAR MILL, Phase I, Map 3, as shown on a map therof
recorded in Map Book 47 at Page 699 in the Office of the Register of Deeds
for Mecklenburg County, North Carolina, to which reference is hereby amde.

BEING in all respects the same property conveyed to Borrowers
herein by deed recorded contemporaneously herewith in the
aforesaid County Registry.
```

Parcel ID Number: **031-053-55**
which has the address of **916 OLD FORESTER LANE**                                    [Street]
**Charlotte**                                    [City], North Carolina **28214**     [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials:

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating



VMP®-4N(NC) (0510)                    Page 3 of 9

Initials:

circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.





Initials

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

> (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
>
> (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: 



**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.



Initials: 



**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notice to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of                           5.000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider




Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Markisha L Johnson                    -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                        -Borrower

**STATE OF NORTH CAROLINA,**

    I    Jill Obermeier

a Notary Public of the County of
certify that

Mecklenburg            County ss:

Mecklenburg        , State of North Carolina, do hereby

      MARKISHA L. JOHNSON

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally appeared before me this day, each acknowledging to me that he/she/they voluntarily signed the foregoing instrument for the purpose stated therein, and in the capacity indicated.

    Witness my hand and official seal this  **5th**  day of    **January, 2009**

My Commission Expires: 7|31|11



Notary Public

**STATE OF NORTH CAROLINA,**

    The foregoing certificate of

a Notary Public of the County of

is certified to be correct.

    This      day of

**County ss:**

, State of

Registrar of Deeds

By _____

Deputy Assistant


VMP-4N(NC) (0510)

Initials 

# PLANNED UNIT DEVELOPMENT RIDER

FHA Case No.

████████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **5th** day of **January 2009** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **AMERICAN SECURITY MORTGAGE CORPORATION**

("Lender") of the same date and covering the Property described in the Security Instrument and located at: **916 OLD FORESTER LANE Charlotte, NC 28214**

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**Cedar Mill**

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to

FHA Multistate PUD Rider - 10/95
VMP-589U (0402)
Page 1 of 2      Initials:
VMP Mortgage Solutions, Inc.

Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Markisha L Johnson          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                    -Borrower

VMP®-589U (0402)                    Page 2 of 2



J. DAVID GRANBERRY
REGISTER OF DEEDS, MECKLENBURG
COUNTY & COURTS OFFICE BUILDING
720 EAST FOURTH STREET
CHARLOTTE, NC 28202

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of the recorded document, and must be submitted with original for re-recording and/or cancellation.

| | |
|---|---|
| Filed For Registration: | 01/06/2009 10:38:31 AM |
| Book: | RE   24351  Page: 608-619 |
| Document No.: | 2009001153 |
| | D/T   12 PGS   $54.00 |
| Recorder: | LYVANH PHETSARATH |



*2009001153*

IN REGISTRATION J. DAVID GRANBERRY
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
2011 AUG 09 09:00:35 AM
BK:26660 PG:151-152 FEE:$14.00
INSTRUMENT # 2011088422

2011088422

Drawn by and mail to:

Shapiro & Ingle, L.L.P.
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216

### ASSIGNMENT OF NOTE AND DEED OF TRUST

FOR AND IN CONSIDERATION OF the sum of ($10.00), cash in hand paid and other valuable consideration, the receipt of all of which is hereby acknowledged, the undersigned Mortgage Electronic Registration Systems, Inc as Nominee for American Security Mortgage Corporation does hereby sell, convey and assign to GMAC Mortgage, LLC, that certain note dated January 5, 2009, evidencing a repayment obligation in the original principal amount of $154,163.00 secured by that deed of trust signed by Markisha L. Johnson, to Philip R. Mahoney, Trustee, in favor American Security Mortgage Corporation, of even date and recorded in Book 24351 at Page 608, Register of Deeds of Mecklenburg County State of North Carolina. The deed of trust was given to secure the repayment of the note.

IN WITNESS WHEREOF, the parties of the first part do hereunto set their hands this the _____ day of _August/2011._

Mortgage Electronic Registration Systems, Inc as Nominee for American Security
Mortgage Corporation
BY:
TITLE: **Lori Ann Dasch** Vice President

STATE OF **Pennsylvania**
COUNTY OF **Montgomery**

I, _____ **Mary Lynch** _____, a Notary Public of the County and State aforesaid, certify that **Lori Ann Dasch** personally came before me this day and acknowledged that he/she is **Vice President** being authorized to do so, executed the foregoing on behalf of the corporation.

Witness my hand an official stamp or seal, this 2 day of _August_, 2011.

Notary Public

My Commission Expires: _11/3/14_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

MIN PHONE # 888-679-6377
MIN



 INDECOMM GLOBAL SERVICES

JOHNSON                    070G01 0000012
753559          OCWE-GNMA
0602209892
RNT 2

## Level II e-Recording Requirement Notification

To:  Indecomm Global Services Client

Re:  Returned Original Documents

Dear Customer,

**Your Real Estate document has been filed using Level II e-Recording.**

The document has been converted in electronic form through imaging. The county has recorded the document and provided an image of that document with recording data as the official recorded document.

You have received both the original document and the recorded copy of that imaged document now that the process is complete. Our website will show the image of the electronically recorded document for you to review.

**Keep both copies of this document together as proof of recording.**

If you have any questions, feel free to call or email me at any time. Indecomm Global Services appreciates doing business with you.

Sincerely,

Latha Parameswaran
Vice President Operations
Indecomm Global Services
(fka US Recordings, Inc)
2925 Country Drive
St. Paul, MN  55117
Phone: (651) 765-6400
Fax: (651) 482-0783
latha@indecomm.net
www.usrecordings.com

For Registration J. David Granberry
Register of Deeds
Mecklenburg County, NC
Electronically Recorded
2013 May 15 09:01 AM      RE Excise Tax: $ 0.00
Book: 28334      Page: 318      Fee: $ 26.00
Instrument Number      2013074278

## Assignment of Deed of Trust

Dated: May 9, 2013

For value received **GMAC Mortgage, LLC, In C/O Ocwen Loan Servicing, LLC, 1100 Virginia Drive, Suite 175, Fort Washington, PA 19034,** the undersigned hereby grants, assigns and transfers to **Ocwen Loan Servicing, LLC** all beneficial interest under a certain Deed of Trust dated January 5, 2009 executed by MARKISHA L JOHNSON and recorded in Book 24351 on Page(s) **608** as Document Number **2009001153 on January 6, 2009 in the office of the Register of Deeds of Mecklenburg County, North Carolina.**

MORTGAGE AMOUNT: $154,163.00

Submitted electronically by US Recordings in
compliance with North Carolina statutes
governing recordable documents and the terms
of the submitter agreement with the
Mecklenburg County Register of Deeds.

GMAC Mortgage, LLC

By

**Lisa Marie Spurbeck,
Assistant Vice President**

STATE OF **Minnesota**                              )

COUNTY **Ramsey**                              ) SS

On **May 9, 2013** before me, **Sandra Jean Kinnunen** , Notary Public in and for said State personally appeared **Lisa Marie Spurbeck** , **Assistant Vice President of GMAC Mortgage, LLC**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

This instrument was prepared by:
Lisa Spurbeck
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

Sandra Jean Kinnunen, Notary Public
My Commission expires: **January 31, 2016**

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

SANDRA JEAN KINNUNEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

J David Granberry
REGISTER OF DEEDS
Mecklenburg County, NC
2014 MAY 12 03 34 06 PM
BK 29171 PG 243-251
FEE $26 00
INSTRUMENT # 2014051339

TAYLORD



2014051339

Investor Loan # ▮▮▮▮▮
*Prepared by: LAURA SAUL*
~~After Recording Return To:~~
Ocwen Loan Servicing, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID: RA1

**When Recorded Return To:**
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117 ▮▮▮▮▮

This document was prepared by Ocwen Loan Servicing, LLC

_____ [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): MARKISHA L JOHNSON
Lender\Servicer or Agent for Lender\Servicer: Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 1/5/2009 *original amount 184,163.00*
Loan Number ▮▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 916 OLD FORESTER
LANE   CHARLOTTE NC 28214

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage.  The Note is secured by a Mortgage, Deed of Trust,
or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable,
recorded on **with Instrument Number **in Book** and/or Page number** of the real property records of
MECKLENBURG County, NC.  Said Security Instrument covers the real and personal property described
in such Security Instrument (the "Property") located at 916 OLD FORESTER LANE  CHARLOTTE NC
28214, which real property is more particularly described as follows.  The Mortgage and Note together, as
they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms
used in this Agreement and not defined have the meaning given to them in Loan Documents.

**1|6|2009**

**(Legal Description – Attached as Exhibit if Recording Agreement)**

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

_____
If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I."  For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.



9

1.　　**My Representations**. I certify, represent to Lender and agree:

   A.　　I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.　　I live in the Property as my principal residence, and the Property has not been condemned;

   C.　　There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.　　I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

   E.　　Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

   F.　　If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

   G.　　I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

   H.　　If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.　　**Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A.　　TIME IS OF THE ESSENCE under this Agreement;

   B.　　If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C.　　I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.　　**The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/1/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 12/1/2013.

   A.　　The new Maturity Date will be: 11/1/2043.

   B.　　The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $134,564.80 (the "New Principal Balance").

   C.　　Interest at the rate of 4.250% will begin to accrue on the New Principal Balance as of 11/1/2013 and the first new monthly payment on the New Principal Balance will be due on12/1/2013.
      My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends On |
|---|---|---|---|---|---|---|
| 4.250% | 11/1/2013 | $661.97 | $294.11, adjusts periodically | $956.08, adjusts periodically | 12/1/2013 | 11/1/2043 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements**. I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

E.   **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds

for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan

Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee or my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  Except as noted herein. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provisions are null and void.

K.    That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and no withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M.    That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii)Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate line (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v)any HUD certified housing counselor.

N.    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.  If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note.  All documents the Lender requests of me under this section 4.N shall be referred to as "Documents".  I agree to deliver the Documents within ten

(10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal) _Markisha L Johnson_

MARKISHA L JOHNSON

_11/21/13_

Date

Witness _Jameshia Tillman_

Print Name _Jameshia Tillman_

(Seal) _____

Date _____

Witness _Claus R Vega_

Print Name _Marisol R. Vega_

(Seal) _____

Date _____

Witness _____

Print Name _____

(Seal) _____

Date _____

Witness _____

Print Name _____

_____ [Space Below This Line For Acknowledgement]_____

## BORROWER ACKNOWLEDGMENT

State of _North Carolina_

County of _Gaston_

On this _21st_ day of _Nov_, _2013_, before me undersigned, a Notary Public in and for said county and state, personally appeared MARKISHA L JOHNSON    , personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public _Nina Williams_

My commission Expires: _06/2018_

Ocwen Loan Servicing, LLC

By: _____
     Authorized Officer  Jennifer Meester

Date: _____4-10-2014_____

**LENDER ACKNOWLEDGEMENT**


State of   IOWA

County of   BLACK HAWK

On this 10 day of April , 20 14 , the undersigned, a Notary Public in and for said county and state, personally appeared Jennifer Meester , personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer, Ocwen Loan Servicing, LLC and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

                                  Witness my hand and official seal.

                                  _____
                                  Notary Public  Wai Thi Oo Myint

                                  My Commission Expires: 5/28/16



WAI THI OO MYINT
COMMISSION NO.778642
MY COMMISSION EXPIRES
MAY 28, 2016

Derivation Clause:

This being the same property conveyed to Markisha L. Johnson from American Security Mortgage Corporation by deed dated January 05, 2009 and recorded January 06, 2009 in the Register of Deed for Mecklenburg County, North Carolina in Deed Book 24351, Page 608-619, Instrument #2009001153.

BEING all of Lot 134 of CEDAR MILL, Phase I, Map 3, as shown on a map therof recorded in Map Book 47 at Page 699 in the Office of the Register of Deeds for Mecklenburg County, North Carolina, to which reference is hereby amde.

BEING in all respects the same property conveyed to Borrowers herein by deed recorded contemporaneously herewith in the aforesaid County Registry.

